[Cite as *White v. Ohio State Univ. College of Veterinary Medicine*, 2009-Ohio-7034.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

KENNETH M. WHITE, et al.

    Plaintiffs

    v.

THE OHIO STATE UNIVERSITY COLLEGE OF VETERINARY MEDICINE

    Defendant
    Case No. 2008-09813

Judge Alan C. Travis

DECISION

{¶ 1}   Plaintiffs brought this action for professional negligence against the Ohio State University College of Veterinary Medicine.  The complaint was filed on September 19, 2008.  Defendant answered and admitted negligence.  The parties differ on whether plaintiffs suffered any compensable damages as a result of the admitted negligence.  A trial on the issue of damages was held on November 9, 2009.

{¶ 2}   Plaintiffs are engaged in the business of breeding, raising, and racing horses.  Plaintiffs own a yearling horse named Ivan.  On July 1, 2008, when Ivan was three months old, plaintiffs brought the foal to The Ohio State University large animal facility for surgical repair of a hernia.  At the time, another horse was at the facility for gelding.  Defendant's veterinary staff confused the names of the owners and scheduled Ivan for both hernia repair and gelding.  The hernia was repaired and no claim is made regarding that procedure.  Plaintiffs' claim is based on the negligent sterilization of Ivan.

{¶ 3}  The parties are in substantial agreement on the basic facts, but differ in their interpretation of those facts.  Plaintiff Kenneth White[1] has been engaged in buying, selling, and training quarter horses since 1983.  White identified Plaintiffs' Exhibits A through XX, as a series of documents that trace Ivan's pedigree and the racing records of other horses in his lineage.  White testified that he and his wife chose to cross-breed two horses they owned in the hope that they would produce a "superstar" stallion for breeding purposes.  The sire was Ivar, a thoroughbred.  The dam was Paquita Fast Girl, a quarter-horse.  Ivan, born in the spring of 2008, was the result.

{¶ 4}  White testified that both Ivar and Paquita Fast Girl were sprint horses, a quality he felt would enable him to produce a fast race horse.  White intended to race Ivan and then, at some time in the future, make Ivan available for breeding.  White felt confident that but for the negligence of defendant, Ivan would have stood at stud 15 to 20 times a year at a fee of at least $750.  White testified that it is not unusual for a horse to procreate into its early twenties.

{¶ 5}  White concedes that there is no guarantee of success in the horse business.  While he feels that Ivan would have developed and been available for breeding in the normal course, he agrees that there is no evidence that Ivan would have been fertile at maturity or would have produced any offspring.

{¶ 6}  White accepts the fact that the general market value of Ivan is the same whether the horse were a stallion or a gelding.  White believes that Ivan is worth approximately $7,500 on the open market.  White also agrees that whether a stallion or gelding, Ivan remains eligible to run in the same races.  Therefore, there is no loss of Ivan's general market value as a result of the negligence of defendant.  However, plaintiffs contend that the true measure of damages is the loss of Ivan's ability to stand at stud and collect breeding fees over his lifetime.

{¶ 7}  According to White, the true value of a horse is based primarily upon bloodlines rather than the record of winnings that the horse may earn during a racing career.  In his opinion, Ivan comes from a long line of well-credentialed horses and Ivan's pedigree should enhance his worth above the normal market value.  Plaintiffs called no other witnesses on the issue of damages.

---

[1]References to "plaintiff" or "White" throughout this decision are to plaintiff Kenneth White.

{¶ 8} Defendant called Phillip Victor Clark who testified on the valuation and appraisal of race horses. Clark is a certified public accountant. Clark estimated that 50 percent of his accounting clients are in the business of breeding, raising, showing, and racing horses. Clark is a member of the American Quarter Horse Association and has been a board member of the Ohio Quarter Horse Association since 1982. Clark has extensive experience announcing horse sales throughout the country and has studied equine pedigrees for decades. Clark has been asked to provide his opinion on the valuation of horses by clients and others in the horse business on a regular basis. He has testified as an expert on the subject in various courts. The court finds that Clark is qualified to express an opinion on the value of plaintiff's gelding, Ivan.

{¶ 9} Unlike White, Clark holds the opinion that the value of a horse that has been bred for racing is primarily influenced by its success in racing. Clark offered examples of horses that were promising based upon their blood lines, but were ineffective in their racing career and lost value as a result.[2] Without success in racing, a horse cannot command a significant stud fee and has no enhanced value beyond that which the market will bear.

{¶ 10} Clark reviewed Ivan's pedigree. The sire, Ivar, has an excellent pedigree. As a yearling in 1999, Ivar was purchased for $105,000. He sold a year later as a two-year old for $226,000. Thereafter, his value diminished significantly. Ivar was raced 36 times from the time he was a two-year old in 2000 until he was retired as an eight-year old in 2006. Despite his early promise and the relatively high initial purchase price, based presumably upon his pedigree, Ivar was unsuccessful in racing. He won only once, with four second-place and three third-place finishes. His lifetime winnings totaled $22,550.

{¶ 11} Clark found it significant that during Ivar's racing career, the horse was entered in a series of claiming races. In a claiming race, any owner or trainer has the right to claim or purchase an entered horse at the claiming price for that race. Several

---

[2]As an example, Clark reviewed the history of "Pulpit," a successful winner at the race track. Pulpit's pedigree included a series of successful race horses. As a result of his racing success, Pulpit commanded an $80,000 stud fee. A breeder paid the fee and Pulpit produced "Stormbreeze." Stormbreeze came from the same lineage as Pulpit, but unlike his sire, Stormbreeze was unsuccessful in racing. Eventually, Stormbreeze was sold for $1,200. Clark stated the greatly diminished value of Stormbreeze, a well-bred, but unsuccessful race horse, was the norm.

of the claiming races in which Ivar was entered were for as little as $3,500. (Defendant's Exhibit 11.) Clark testified that if a horse were a good quality stallion, it would not be entered in a $3,500 claiming race. Moreover, if a stallion had potential value for breeding, it would be rare that an owner would continue to enter the horse in races for as long as had been done in Ivar's case. Based upon his review of the evidence, Clark was of the opinion that when Ivar was retired from racing in 2006, the horse had almost no commercial value as a thoroughbred.

{¶ 12} Clark also reviewed Ivan's dam, the quarter horse Paquita Fast Girl. He noted that Paquita Fast Girl came from some of the best racing stallions in the industry. However, Paquita Fast Girl had a speed rating of only 71, well under the minimum rating of 80 necessary to qualify for the quarter horse "Register of Merit." Paquita Fast Girl earned only $696 in her career.[3] Ivan's second dam, Antique Silk, did have a Register of Merit speed rating, but won only one race and produced insignificant earnings of only $657.[4]

{¶ 13} Based upon his knowledge and experience as an owner, breeder, buyer and seller of racing horses, along with Ivan's pedigree and the racing history of various horses in Ivan's lineage, Clark concluded that Ivan was a below-average foal with a weak pedigree. Whether as a stallion or gelding, Ivan remains eligible for the same races. Therefore, Ivan's value as a race horse remained the same whether gelded or not. Clark felt Ivan had a market value of between two and three thousand dollars. If Ivan turned out to be a superior or outstanding horse, the estimated value might be twice that much. Clark stated that it was impossible to estimate future earnings that might have been realized from breeding Ivan.[5]

{¶ 14} As a general rule, where a plaintiff claims that personal property was damaged by the negligence of another, damages are limited to the difference between the fair market value of the property before and immediately after the loss. *Falter v. City of Toledo* (1959), 169 Ohio St. 238; *Oberschlake v. Veterinary Associates Animal*

---

White feels that the lack of racing success was because Paquita Fast Girl had been raced while lame by a former owner and was unable to perform at the track.

The mare that produces a foal is designated first dam. The next older generation is designated second dam and so forth.

*Hospital, et al.* (2003), 151 Ohio App.3d 741, 2003-Ohio-917, ¶9, citing *Akro-Plastics v. Drake Industries* (1996), 115 Ohio App.3d 221, 226. The market value rule is not absolute.

{¶ 15} "Market value is the standard which the courts insist on as a measure of direct property loss, where it is available, but that is a standard, not a shackle. When market value cannot be feasibly obtained, a more elastic standard is resorted to, sometimes called the standard of value to the owner. This doctrine is a recognition that property may have value to the owner in exceptional circumstances which is the basis of a better standard than what the article would bring on the open market." *Bishop v. East Ohio Gas Co. (*1944), 143 Ohio St. 541, 546. An owner of personal property may have sufficient knowledge of the value of personal property to testify to its value because of its peculiar worth to the owner. The opinion of an owner is not conclusive, but is simply some evidence of the value of the property. Id. However, mere speculation is insufficient to prove loss or damage to personal property. *Shimola v. Nationwide Insurance Co.* (1986), 25 Ohio St.3d 84, 87.

{¶ 16} Plaintiffs argue that there are unusual circumstances present in this case and the general rule that requires testimony as to market value should not be applied. Plaintiffs seek support in *McDonald v. Ohio State Veterinary Hosp.* (1994), 67 Ohio Misc.2d 40. In *McDonald*, a dog was paralyzed as a result of the professional negligence of the veterinarian. The court recognized that market value is the standard in the valuation of personal property loss, but based on *Bishop v. East Ohio Gas Co.*, supra, found there were exceptional circumstances and awarded damages based upon the unique value of the animal to the owner. The dog had undergone several years of rigorous and highly specialized training at significant expense to the owner and a similar dog was not available on the open market. In essence, there was no market value for the damaged personal property in *McDonald*.

{¶ 17} In contrast to both the *Bishop* and *McDonald* cases, there are no exceptional circumstances present here that would warrant a departure from the market value rule. Although White hoped his cross-breeding experiment would produce a

This is consistent with the written opinion of Steve Branstetter, a horse breeder consulted by plaintiff. Branstetter felt it was "impossible to put a price" on the loss of breeding income, but the potential would be in the thousands of dollars. (Defendant's Exhibit 16.)

superior horse, there is no evidence that Ivan is unique or that the circumstances of this case are unusual. See *Oberschlake*, supra, at ¶10. In White's opinion, Ivan came from a good pedigree. In contrast, Clark opined that Ivan was a below average foal with a weak pedigree. Although the parties differ on the specific value of Ivan, market value is readily ascertainable from the testimony and documentary evidence presented. There is nothing to distinguish this case from any other case involving damage to personal property. Moreover, both plaintiffs and defendant agree that the fair market value of Ivan would be the same whether considered as a stallion or a gelding. Therefore, under the general rule of damage to personal property, the value of Ivan was not diminished by the negligent gelding of the horse and plaintiffs have suffered no damage.

{¶ 18} Even if this case were based on exceptional circumstances and the normal measure of damages were not applicable, plaintiffs have not met their burden of proof of future damages. A court may not award future damages except on proof that those damages are reasonably certain to exist. The term reasonably certain means probable; that is, more likely to occur than not. *Hammerschmidt v. Mignogna* (1996), 115 Ohio App.3d 276, 281-282, see also Ohio Jury Instructions, Section 315.01. White concedes that he has no evidence that Ivan would be fertile at maturity or that he would be successful in producing offspring. Estimates of Ivan's future earnings are speculative. Plaintiffs have not proven that it is reasonably certain that they will suffer damages in the future as a result of Ivan's inability to perform at stud. Accordingly, judgment shall be rendered in favor of defendant.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

KENNETH M. WHITE, et al.

        Plaintiffs

v.

THE OHIO STATE UNIVERSITY COLLEGE OF VETERINARY MEDICINE

Defendant
Case No. 2008-09813

Judge Alan C. Travis

JUDGMENT ENTRY

This case was tried to the court on the issues of liability and damages. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
ALAN C. TRAVIS
Judge

cc:

Daniel L. Bennett
William T. Goslee
114 South Main Street
P.O. Box 416
Bellefontaine, Ohio 43311-0416

Jeffrey L. Maloon
Karl W. Schedler
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

ACT/cmd
Filed December 9, 2009
To S.C. reporter December 29, 2009